IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JUAN PABLO LOPEZ, on behalf of | ) | |
| himself and other persons similarly situated | ) | CIVIL ACTION NO. 16-2408 |
| | ) | |
| *Plaintiffs*, | ) | JUDGE MARY ANN LEMMON |
| v. | ) | |
| | ) | MAG. JUDGE JOSEPH WILKINSON |
| F.I.N.S. CONSTRUCTION, LLC., | ) | |
| ROBERT L. ARMBRUSTER, JR. and | ) | |
| NICOLE L. ARMBRUSTER | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO MODIFY MAGISTRATE'S APRIL 19, 2017 ORDER PURSUNT TO FEDERAL RULE OF CIVIL PROCEDURE 72(a) AND PROTECTIVE ORDER

NOW INTO COURT, through undersigned counsel, come Plaintiffs Danilo Mejia and

Edgar Aleman, who respectfully submit this memorandum in support of Plaintiffs' *Motion to*

*Modify Magistrate's April 19, 2017 Ruling Pursuant to Federal Rule of Civil Procedure 72(a) and*

*Protective Order*:[1] to wit:

Must a potentially undocumented immigrant be forced to admit his crime to recover

under the FLSA? This brief argues no.

At issue are the payroll documents for two opt-in Plaintiffs in an FLSA collective action.

Plaintiff Juan Pablo Lopez filed this case on behalf of himself and others similarly situated,

alleging that Defendants did not pay overtime to its manual laborer employees.[2] After

---

[1] Rule 72(a) dictates that a district judge can consider nondispositive decisions by the magistrate judge and modify any part of the order that may be contrary to law.

[2] Complaint ¶ 1.

conditional class certification was granted,[3] two former employees of Defendants opted-in to this action to recover their unpaid overtime wages.[4] They are Edgar Aleman and Danilo Mejia.[5]

Aleman and Mejia made discovery requests for their pay records. The Defendants said they had no records for any such-named individuals. The Plaintiffs then indicated that the records for Aleman and Mejia would be listed under aliases they allegedly used, and provided the aliases. Defendants took issue with that. They argued that the records were not "relevant" because there was no proof that Aleman and Mejia actually used those aliases. They also argued that Plaintiffs' use of aliases was a crime—which Defendants claimed was germane to their defenses. Plaintiffs filed a motion to compel the pay records.[6] The Magistrate Court denied the motion, and instead made production of the pay records conditional on the depositions of Aleman and Mejia—and specifically conditional on testimony "revealing" their "use" of a "fictitious name" or "false identity."[7]

It is not clear from the Magistrate's order what line of questioning is permissible to "reveal" the Plaintiffs' use of "false identities." One reading is that it requires Plaintiffs to make criminal admissions or, alternatively, drop their respective cases. While there are numerous ways to establish Plaintiffs' employment with Defendants that do not require explicit criminal

---

[3] Rec. Doc. 18.

[4] Danilo Mejia [Rec. Doc. 27] and Edgar Aleman [Rec. Doc. 28].

[5] This brief refers to Aleman and Mejia alternatively as "Plaintiffs."

[6] Rec. Doc. 46.

[7] "If the evidence thus obtained reveals that Danilo Mejia used the fictitious name or false identity of Hector Manuel Santos-Sanchez and that Edgar Aleman used the fictitious name or false identity of Rogelio Luna, the court orders defendant to [produce the pay records]." Rec. Doc. 50.

admissions, Plaintiffs' counsel was wary that the deposition questioning would not be so circumspect. This intuition was confirmed via email earlier this week, where Defense counsel indicated his intent to dive deep into the criminal implications of the alias issue.

Considering that this question will inevitably come before Your Honor at trial or possibly before, the Plaintiffs now seek an appeal and modification of the Magistrate's order. Specifically, Plaintiffs ask for two forms of relief: (1) the compulsion of the pay records associated with the two alleged aliases of Plaintiffs;[8] and (2) a protective order prohibiting any discovery regarding any alleged crimes by the Plaintiffs.

### A.  The pay records should be compelled.

As an initial matter, the Court should modify the Magistrate's ruling and compel the pay records of the two individuals that were allegedly aliases of Aleman and Mejia. Their relevancy is clear based on Plaintiffs' contention that the records reflect the hours that they worked. Defendants object to producing the records, arguing it is possible that Plaintiffs are lying about using those aliases, and thereby resulting in the disclosure of pay records of non-plaintiffs.

However there are a number of scenarios where the pay records of non-plaintiffs who are *definitely not* the plaintiffs in an FLSA case are still relevant. For instance, sometimes day-rate laborers work alongside hourly employees. In that case the hourly employees' pay records are a useful marker for the hours worked by the day-rate laborers. Another example is where some laborers are paid overtime and others are not. The records of the non-plaintiff workers in that

---

[8] Obtaining the records if of paramount importance because this is not a large or complicated case. The named Plaintiff was not paid approximately $1,900 in overtime. One assumes the numbers are similar for Aleman and Mejia. Continuing to litigate this case is a waste of attorney and Court resources.

case might be evidence of bad faith or discrimination by the employer. In both of these scenarios, the pay records of non-plaintiffs are relevant.

If the records of non-plaintiffs who are *definitely not* the plaintiffs are potentially relevant, it is hard to see how the records of non-plaintiffs who the plaintiffs *claim to be* are not. Defendants argue that Plaintiffs could be lying—they could be anyone, goes the argument—however the pay records speak for themselves: they provide photographic evidence of the individuals who worked for the Defendants under those aliases. Defendants required an I-9 form from all employees. I-9 forms require photo identification.[9] So while the pay records would be relevant even without the photo ID element, this provides further reason to turn the documents over. In sum, there is no valid argument as to the non-relevance of the pay records. Compelling their production would go a long way towards resolving this case.

### B.  Fifth Amendment and Due Process concerns.

The Supreme Court has stated that the Fifth Amendment "guarantees…the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence."[10] The concept of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth Amendment privilege `costly.'"[11]

---

[9] Official Website of the Department of Homeland Security, *Form I-9 Acceptable Documents*, https://www.uscis.gov/i-9-central/acceptable-documents/list-documents/form-i-9-acceptable-documents (last accessed May 3, 2017).

[10] *Spevack v. Klein*, 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967) (quoting *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493-94, 12 L.Ed.2d 653 (1964))

[11] *Id.* at 515, 87 S.Ct. at 628 (quoting *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232-33, 14 L.Ed.2d 106 (1965)).

In addition to Fifth Amendment rights, civil litigants have a right to due process.[12] A plaintiff should not be forced to choose between his or her silence and their lawsuit.[13] "The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another."[14] Yet "a civil plaintiff has no absolute right to both his silence and his lawsuit. Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege. When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." To deal with this problem, the Fifth Circuit has espoused a "balancing test" where the court should measure "…the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible. This balancing-of-interests approach ensures that the rights of both parties are taken into consideration before the court decides whose rights predominate."[15]

In *Wehling v. Columbia Broadcasting System*, the Fifth Circuit employed such a test. In that case, the plaintiff sued CBS for defaming him with in a news broadcast about his alleged criminal activity. CBS then questioned the plaintiff, in deposition, regarding the criminal activity. Because the plaintiff was facing charges for that criminal activity concurrent with his civil case, the plaintiff invoked his Fifth Amendment rights. As a penalty for his refusal to testify, the district court dismissed the plaintiff's case. The Fifth Circuit reversed, stating that the

---

[12] *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1088 (C.A.5 (Tex.), 1979).

[13] *Id.*

[14] *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

[15] *Id.*

district court should have stayed discovery pending resolution of the criminal charges, "[b]ecause [that remedy] would not impose undue hardship on defendant and, therefore, would protect the party exercising a constitutional privilege from unnecessary adverse consequences…"[16]

The balancing test from *Wehling* should be applied in this case. Rather than forcing Aleman and Mejia to choose between their Fifth Amendment and Due Process rights, the Court should resolve the issue by fashioning a solution that takes into account the competing interests of both parties.

### i.       Plaintiffs' Interests

Obviously, Plaintiffs' cases depend on the hours they worked. There is no better source of this information than pay records. Pay records allow FLSA-plaintiffs to compute the hours they worked using their hourly rate of pay (or, in some cases, the pay records include a breakdown of the hours worked.) Under the FLSA, employers are required to maintain such records.[17] As argued, *supra*, Plaintiffs believe that the records associated with the two alleged aliases are relevant, in and of themselves, to show the hours that Plaintiffs worked. Additionally, they also provide photographic evidence of the individuals who worked for the Defendants under those aliases. Plaintiffs should not be forced to give up their Fifth Amendment Rights in order to obtain such fundamentally relevant discovery. Additionally, from a policy perspective, courts

---

[16] *Id.* at 1089.

[17] 29 C.F.R. Part 516.

should not allow FLSA-plaintiffs to be coerced into dropping their claims by every defendant willing to raise the specter of immigration-related criminal activity.[18]

### ii.   Defendants' Interests

Defendants argue that the Plaintiffs should be compelled to testify about their alleged criminal fraud because that provides them with a defense to their violations of the FLSA. Plaintiffs do not see the connection. It is unclear how mispresenting one's identity gives an employer carte blanche to violate the FLSA.[19] Hopefully in opposition to this motion, Defendants will give us some more details as to their theory. One possibility is that fraud goes to credibility, which is always an issue for any party or witness. So the best way to deal with this dispute may be an adverse presumption. In exchange for foregoing discovery or cross-examination on the alleged criminal fraud issue, the Court could order an adverse presumption as to the credibility of Aleman and Mejia.

### iii.   Protective Order

The Court should order a protective order that prohibits any discovery into Plaintiffs' alleged criminal conduct. This does not prevent Defendants from any variety of discovery that goes towards Plaintiffs' identities and employment with Defendants. Testimony of co-workers;

---

[18] The ironic effect is that by weakening illegal immigrants' rights under the FLSA, employers are incentivized to hire illegal immigrants and pay them sub-FLSA wages—which ultimately depresses wages for American workers.

[19] This is not an instance where the worker committed fraud related to their hours worked. In such instances, the connection between the fraud and the FLSA is clear. *See, e.g. Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972) (estopping plaintiff from recovering unpaid overtime because she misrepresented her hours). Plaintiffs also did not file this action under their alleged aliases, which would also constitute fraud. *See Ramos v. Conway*, 2014 WL 3124433 at (W.D. La. July 7, 2014) (dismissing plaintiff's FLSA claim with prejudice because he filed the action under a false name); *see also Rodriguez v. Bollinger Gulf Repair*, 985 So. 2d 305 (La. App. 4 Cir. 5/21/08) (dismissing FLSA claim with prejudice because the plaintiff filed under a false name, lied under oath during a deposition, and provided false responses to discovery).

Plaintiffs' knowledge of the job they allegedly performed; their knowledge of Defendants' business; their identification by co-Plaintiffs or Defendants; or even in-camera finding by the Court, are all ways this same objective can be accomplished.

They also do not entail the violation of anyone's constitutional rights.


*/s/ Emily A. Westermeier*
_____
Roberto Luis Costales (#33696)
William H. Beaumont (#33005)
Emily A. Westermeier (#36294)
BEAUMONT COSTALES LLC
3801 Canal Street, Suite 207
New Orleans, LA 70119
Telephone: (504) 534-5005
Facsimile: (504) 272-2956
*emily.costaleslawoffice@gmail.com*


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 3, 2017, I served a copy of this Memorandum on counsel for Defendants via EC/CMF.

*/s/ Emily A. Westermeier*